V. Secretary of Veterans Affairs 157081 Disabled American Veterans and Veterans of Foreign Wars of the United States against the Secretary of Veterans Affairs, Ms. Hines. Thank you very much, Your Honor. May it please the Court, my name is Dori Hines and I'm appearing today on behalf of DAV and VFW with respect to the Rules Challenge. I'd like to address three issues. One, with respect to the effective date for non-form initial submissions. The second, the prohibition on tolling for non-form NODs. And the third, the increased level of specificity now required in the NOD. I'd like to go to the second issue first because it was addressed in the questioning in the last case. Now, with respect to tolling, tolling was addressed in our brief and we did argue that the new rule 38 CFR 2201A5 is invalid because it prohibits tolling for a certain class of veterans. And that is veterans who do not submit the NOD on the form. This regulation prohibits tolling, any type of tolling or extension for them. Does it do so expressly or are you simply saying that because it doesn't provide for tolling? It does so expressly. And it does so expressly for that particular group of veterans, those that don't submit the form as the NOD. I took the government saying just a few minutes ago that yes, the rule says a claimant won't get automatic tolling by virtue of filing a non-standard form NOD. But the rule doesn't additionally block and prevent any possibility of equitable tolling. Now, he was a little bit equivocal about whether equitable tolling is something that would be possible for a claimant under those circumstances. But at least in terms of equitable tolling, it's his understanding of the rule that on its face doesn't bar the possibility of equitable tolling for a claimant who's in the circumstances of having filed a non-standard form NOD. And that may be. That hasn't been the government's position before. In fact, when we briefed this issue, the government did not respond at all to our argument about Henderson and the applicability of Henderson. The regulation does say, though, that the filing of an alternate form or other communication will not extend, toll, or otherwise delay the time limit for filing the Notice of Disagreement. And we think that's pretty clear that there is an express prohibition on tolling, and we think that's invalid. Now, that assumes that there's no forms ever filed rather than a form just filed late, right? That assumes. That is the case for a veteran who does not submit the NOD on the form. That's correct. And that's our challenge, is for the veteran that does not submit the form, that there should be some possibility of tolling or of extension or some way, if the veteran does not do that, to get that time period. We think that's consistent with Henderson. Mr. Hockey is correct. There is no CAVC decision on point regarding equitable tolling. What the CAVC has said, however, in Hannum v. Shinseki, that's docket number 113537, was that to the extent the board had said or suggested that 7105, that's the NOD provision, is jurisdictional, that was undermined by the Supreme Court's decision in Henderson. So they didn't directly rule on it, but they certainly strongly suggested that equitable tolling should apply, and we believe it should, and we believe it should require a change to that particular regulation. And this issue was not raised in the October cases, correct? This particular issue was not raised in the October. That's correct. Now further with respect to the NOD is the specificity required by the NOD. Now this court, in a number of its cases, has explained what a notice of disagreement is. In the Strott case, the Burton case, Hamilton, and Rivera, this court has been very clear about what an NOD is. Strott most particularly, and that's a case from 1992, says that Congress implicitly adopted the definition of a NOD that was already in place when the VCAA was enacted. What about Gallegos? Doesn't Gallegos squarely address, you know, do a statutory interpretation of 7105 and what an NOD is? And didn't Gallegos then go further and say it's open-ended, it's not an NOD, by statute it's not limited to just the two things that the statute identifies? I don't think Gallegos can be read that broadly, and it certainly doesn't suggest a different result. In fact, in Gallegos, this court looked at the regulation approvingly, at the regulation that defined a NOD at the time, and said that it supported the result there. The only change from what the court said in Strott, and the regulation in effect at the time of Strott, and Gallegos was in Strott, the regulation said that the NOD should request appellate review. In Gallegos, this court looked approvingly on the exact same regulation, and said that the NOD must identify appellate review, a request for appellate review. That is the only difference. I don't think that Gallegos can be read to suggest that any other condition that the VA wants to put on the NOD is appropriate. But I think what it did say is that there's a gap in the statute that the VA can fill. I agree with you that the VA doesn't have unfettered discretion to add any particular additional requirement, but it would have to come within the bounds of what may be deemed reasonable under the Chevron framework. Isn't that a fair reading of Gallegos? I don't believe it is. If there was a gap to be filled, it was quite tiny. It was going from should request appellate review to must request appellate review. And what Gallegos could not do was change what Strott said. Strott came 10 years before and said Congress implicitly adopted a definition of the NOD when enacting specific legislation, VCAA. And when the VCAA was adopted, it was done, and the trigger was the NOD to get into the appellate process. Congress necessarily considered the NOD because it was adopted as part of the VCAA process and allowing veterans to have judicial review. Strott recognized that. But Gallegos' decision, unfortunately, does not. It doesn't discuss Strott. It doesn't even consider Strott. That implicit definition of NOD recognized by Congress needs to continue to be recognized by the VA. If the requirements of the NOD are going to be changed by statute, it must be done by Congress. It cannot be done by VA because of Strott and because of the other cases that say that, Burton, Hamilton, and Rivera, which also recognize that the NOD is supposed to be something simple and basic, triggering the appellate process and getting the veteran from the decision phase to the appeal phase. And so how would this new system not comply with that principle? Well, if you look at the form itself, specificity now required by the form, and we can see the form, the NOD form is at the Joint Appendix A-293. It's also in the appellate record at A-253. Now, instead of a veteran submitting, potentially, a letter to the VA that says, I disagree with the decision that you made on March 7, 2016, full stop. Now, instead, this veteran must submit this form that requests a lot of additional information. And in particular, one problematic area. In commenting on the proposed rules, and you'll find that at JA-27, the government said it would not be necessary for a claimant to describe the area of disagreement. Okay, that's what was said during the rulemaking. But if you look at the form, and the form, again, at JA-293, the form tells veterans VA will consider the form complete at a minimum if it indicates, among other things, the area of disagreement. So the form says exactly what the comment said the veteran doesn't have to provide. In addition, the regulation- What if the VA just adopted a use of a form, but the form had to say, had to list the date of the decision and the request to appeal from that decision, but they wanted it on a form? Your Honor, we are not opposed to the use of forms. And I don't think any of the petitioners, as Counsel for Peter said at the very beginning, are opposed to the use of forms. Forms are beneficial, and they've been used by VA to initiate claims for decades. So we're not opposed to that. The form, though, should be consistent with the implicit definition adopted by Congress, and there should be some provision where a veteran who does not fill out the form can get that deadline told. That deadline can't be made jurisdictional. So if that was the situation, then I think we would be fine with an NOD form. The other issue I'd like to address is the effective date. And this is at the other end of the claim process, which is the effective date for initiating your claim as opposed to the date for the NOD. Now, the effective date provision has been changed. In the past, a veteran could file an informal claim, and that claim would allow the veteran to have an effective date. Now the veteran is required to file the form in order to get the effective date, and the problem is not the form. The problem is eliminating the time period from an informal submission until the actual formal claim or formal form is filed and the loss of benefits for that time period. And that is what we are petitioning, that change. Now, the government argues that by statute it can require forms to initiate claims, and we don't believe that's true. The government relies on 38 U.S.C. 5101 for that proposition. That is titled Claims and Forms, and it says that a specific claim in the form prescribed by the secretary must be filed, but the end of it is what's significant, in order for benefits to be paid. Requiring the form is required for ultimate payment, not for initiation, and the other parts of the statute support that. If we look at 5102A, Application Forms, it says, upon request by any person claiming or applying or expressing an intent to claim or apply for a benefit, the secretary shall furnish all instructions and forms necessary to apply. You know what's troubling about this? Here we have a record, we don't know how complete the record is, but the record seems to be split between veterans and veterans' representatives who say, at last, the form is easier, we don't have to worry about this and that, the form tells us what we need to tell you, and so we're glad to have the form. There are also statements saying this is confusing and disadvantageous, and these conflicting positions, we're told, were balanced by the VA to try and figure out where the greater good is, and how to decide that that's wrong is very difficult on the record. I can see that it's easier for a court to consider that maybe it's a bit too rigid in view of other statutory provisions, that all of the entire structure of the veterans' laws must be veterans-friendly, and you should provide flexibility. But where are we with all this? With the conflict as to whether forms are better or worse, is it too rigid or not? Is there flexibility based on the statute that the courts can announce? We know that your associations are active in representing veterans. It would be interesting to know if there are changes in view based on your positions. At least for DAV and VFW, there is no change of view. In response, I would say two things. Forms are required, and we have no objection to a form being required for benefits to be paid. What we object to is the now and new mandatory nature of a form to initiate a claim. We think that is inconsistent with the statute that provides that a veteran claims or applies, and it's an intent to apply, and then the form is provided, and then the procedure goes on. So the very first thing is a claim or application followed by the form, and we have no problem with that and the mandatory nature of the form at that time. This issue was definitely raised in the October cases, correct? The issue of the early effective date and the elimination of the informal system was addressed. I don't think that it was as clearly addressed a response to the government's statutory position with respect to 5101. There were many arguments about Chevron deference if the system is consistent with the statute. That is absolutely true, and we agree with those arguments. The issue I wanted to bring to the court's attention is a specific response to the government's reliance on 5101 and the system overall.  That scheme has been adopted and ratified. The Congress changes the veterans' rules fairly often, and again, when the BCAA was enacted, it did so. And again, when Congress amended the VA statute to eliminate the concept of well-grounded claim, Congress did that in response to decisions from the CAVC and this court and changed that. They amended the statute, and in doing so, they looked at 5201, 5202, and they amended parts of that statute. What they didn't change, though, was the system in general as it was in place. That is, a claim can be initiated by the veteran in any way, in an informal way that's been used by the VA for almost a century. That was not changed. It was certainly ratified, and it's certainly consistent with the actual statutory language. So our view is, in view of the statutory language, the practice and the ratification by Congress of this system, that the VA, by regulation now, eliminating early effective dates for veterans who don't file on a form is invalid. Okay, thank you. We'll save you rebuttal time, and let's hear from the government. It leaves the court. Yes, the specificity argument was presented in some detail, both in the briefs and at the oral argument in October. I want to begin, though, before I address specificity. But what was the statutory argument even addressed? I'm sure counsel will help me out here. I don't actually remember. I think I may have heard, and it may be in the briefs, this idea that 5101 is somehow limited to the idea that a claim is something different than an application. Our position is you read 5101 and 501A4 together, and they provide 5101A1, and a specific claim in the form prescribed by the Secretary must be filed in order for benefits to be paid. In 501A2, the Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws, to include the forms of applications by claimants under such laws. And we've always interpreted there's always been a requirement prior to this rulemaking to submit a form for new claimants. That's not changed. Yeah, but they didn't have to submit the form to be a placeholder for purposes of the effective date of the claim. There was an effective date result associated with regulations that allowed effectively informal claims, or as we call them now, intense default. How could those regulations have ever been a reasonable interpretation of the statute if you say the statute is mandatory and means something different than those regulations? That's an interesting question. Thank you. And I know that's the last thing I should have said. I've taught appellate advocacy before, but something that I've thought about, too. I would answer it this way. I think, actually, the regulations this time actually are more consistent with the regulations than they may have been once upon a time. But that being said... You mean the regulations now are more consistent with the statute? They more mirror the idea behind the statutes, which tie compensation to applications and complete applications under 5101. Your effective date is the date of your application. It doesn't say the date of your incomplete application. It says the date of your application. So in order to allow a statutory argument that Congress envisioned some sort of placeholders, this court would have to read incomplete into the term application in 5110. Which is what the VA apparently had done before. In the regulations, the VA has often extended benefits, and they're doing it today. Here's an example, Your Honor. I wake up this morning, and I want to file a claim. I'm a veteran. It's a hypothetical. But I'm a veteran, and I want to file a claim. Under the old rules, I want to file a claim. I can write it down on a piece of paper. I go down to my postal service. I find out where the postal guy lives. I send it to him. He gets it. The VA gets it in three or four days. And that could be a placeholder. The VA responds under 5102 with my application. I fill it out. I send it in. That was actually what I could do in March of last year. This morning, I wake up. I want to figure out how do I file a claim. I call the VA up. How can I file a claim? Well, let me connect you to our claims person. You tell them you want to file the claim. They take their information over the phone, and your effective date is that day. So under the new system, your effective date is as early as the day you wake up to try to figure out you want to file a claim if you make a phone call. Now, I recognize, Your Honor, the concerns you have about homeless veterans. VA has, as I was reminded between the arguments, an outreach program to try to help. And you never file the completed form on your hypothetical? You do file. So under the rules, you work with the VA person on the phone who actually types out the information for the form into the form for you while you're on the phone. They ask you the questions. What's your Social Security number? What's your this? What's your that? And they fill out the information there. When you say under the rules, that happens? Under the rules. The rules actually say that? There's a rule for phone. That's one of the great perks of the new rule is we weren't eliminating the idea of placeholders. We were updating them to be commensurate with modern technology. Well, you were eliminating placeholders. What you were saying is? We're changing placeholders. Well, you're eliminating placeholders. You're saying that the form is filed when it gets filed, but you can do it by phone. No, there's actually a placeholder aspect to this as well. So you can go on, you call the person, and you give them a minimal amount of information. That's your placeholder. It's almost like you wrote it out yourself. Then you get the form in the mail that's more expansive, and you fill that out. That form is very similar to the full-length form that's always been required to fill out. Alternatively, if you have access to a computer, I mean, I know it's, you know, the reason we do this is because most of our veterans actually use computers to communicate with the VA, as the court knows and the clerk's office does when dealing with pro se. They like to use computers. Unless you're homeless. Unless you're homeless. But the same concerns, Judge Newman, about homelessness would also affect written communications through the mail. That's why we, in response to the rulemaking, the proposed rule actually kind of eliminated with the sort of paper communication method. And it was brought to our attention by the service organizations and others that what about people who are homeless? What about people that don't have access to computers? What's troublesome is that it seems that for, I don't know what percentage or how rare it is, but for those veterans who don't, for whatever reason, get into the system, school's out. There's no way that they can recover. See, we disagree. VA is actively engaged. That was a question, not a statement. Then I would disagree. This is what we get from the briefs, from the record that you sent us, that however, whatever it is, for those veterans who, for whatever reason, don't put themselves into the system, maybe they don't know to telephone somebody and that it will be filled out over the phone. Maybe they don't know any of this, but they send, as has been done for decades, they write a letter and say they got it wrong. That seems to be the general knowledge and, in fact, the information that comes from the board. So if I may answer that, that's why we have built-in safeguards into these regulations. For example, in the claims process, if the individual doesn't have access to something but sends in the document, actually under the statute 5102, which is incorporated into the regulation 3.155, the VA is required to assist that person to help complete the form. They are required to send them the information necessary to complete the form and follow up. If they send them the form and if it comes back and VA feels that it's incomplete, VA cannot close that. VA has to, under 3.155B3, help the veteran identify what's missing in order for them to complete their application. And there's a similar requirement under 19.24B for the Notice of Disagreements. If you've submitted an incomplete form, the VA, you are not out of luck. If your form is incomplete, the VA is on the clock to help you fix it. Now, that's slightly different, as I said, from the situation. What do you mean by on the clock? Just in terms of understanding 5102, if a claimant files an incomplete but standard claim form, then the secretary notifies the claimant of that? Yes. And then after that, the claimant has one year to respond to the secretary's notification that the form is incomplete? Okay, yes. Under 5102C, I believe it is, the time period is after the ‑‑ I think under 5102C, the time period of one year starts from the date that they get the application. But within that, the regulation builds in an additional safeguard that says if you submit an incomplete application, the VA will tell you what's missing. I'm not sure if the 60‑day or one‑year ‑‑ actually, I think that is. I think it's 60 days or one year, whichever is longer, because sometimes you might not get back to the person within the one‑year period, so there's an alternate 60‑day period that would have 60 days to respond in order to keep everything moving along. But, again, the one thing that was discussed earlier, and I'll be perfectly frank, that I don't think is directly covered by the regulations is this tolling stuff. And there's an NOD context, not in the claim context. It doesn't have anything to do with the claim context. But as we explained earlier, we believe that all ‑‑ what VA is trying to do there is to provide ‑‑ if the VA said, essentially, we're not going to make these forms mandatory, then efficiencies are reduced. So we need to balance the equation. In any rulemaking, that's what the agency does, have to balance the interest of the entire process against the individual claimants. And that's what they did here and came up with all kinds of safety nets to try to help the individual claimants and, in our opinion, have not ruled out, nor could they rule out, application of Henderson to the NOD period for purposes of board review. But they don't want to encourage people to simply file nonstandard forms when they've been provided the standard forms as part of their decision, so they have language in the regulation that discourages that behavior. We think that's perfectly acceptable. And it doesn't preclude a board or a veterans court or this court from imposing some kind of tolling on that process. So is it fair for the court to read the rule as the rule says you don't enjoy, as a claimant, automatic tolling. I think that's right. If you file an informal NOD. However, there's nothing in this rule that bans the possibility of equitable tolling. For a claimant under those circumstances after looking at all the larger facts and circumstances surrounding the untimely official form. I think that's a reasonable interpretation of the rulemaking, Your Honor. I mean, when they specifically changed the scope of the board's review with respect to 20.201A5 filing, the standard form filing, they removed the authority for the board to determine adequacy and compliance with the requirements for an NOD because it's now on the form. So that makes sense. You don't need to do it. But they retained the role of the board to determine timing. And when you have the responsibility to determine timing, you have the full panoply of timing. I can't remember. Did you talk about the requirement, the other side's argument that the requirements in the new NOD demand a lot more substantive information than what was required before? Okay. I only said, I think I started out, I'll move to that now, if you will. I started out by indicating that that was an area that was thoroughly hashed out in the earlier panel. So before you move, then let's pin down what my question originally was that started us down this road, and that is that in the other panel, the argument was never made that the statute does not mandate the system that you're using now. This is in terms of NODs or the claims? I'm sorry. In terms of using the form to initiate the claim. Oh, no. That argument was, as I recall, the argument about whether or not the VA had the authority to require these claims and what was going to happen with the old informal claim rule 3.155, those were all thoroughly addressed in the briefs. But at oral argument, the panel was a little more interested in the reasonableness of the agency's actions. The other side attempted to present argument about the statute, but we didn't go down that road very long. We mainly focused on the reasonableness aspect of it. But you think in the briefs it was, you went down there? It was always in the briefing. The briefs in this case, all five briefs are very similar. I can almost tell you the differences. One difference is in DAV, as was just indicated by counsel, they have this argument about, they made a Hamilton argument, or I mean Henderson argument and a Hamilton argument. That one hit close to the bone. So 23 years I stood before this court and argued Hamilton or something like that. So that aspect of the NOD I do think was new. I don't recall that being subject to the challenges of NOVA, Infectious Justice Group. They were more concerned about the specificity concerns. Why are we asking about knees? DAV has this idea, which we'll now discuss, if the court would like, about Hamilton and Stratt. Which we don't think, actually, their argument doesn't stand up. The point of the Stratt-Hamilton cases was trying to determine when the Veterans Court would start hearing cases. It was a new court, 1988, and Congress imposed a sort of limitation on the cases they could hear by what they called the 38 U.S.C. 7251 Note, Jurisdiction Conferring NOD, as they described it. That was simply designed to have the court address new cases, not cases that had already been subject to board hearings years and years before. Only a new claim, which was appealed into the system after the effective date of the statute, the VJRA, November 18, 1988. So the issue for this court, in Stratt and in Hamilton, was whether certain documents, which nobody disputed were VA Form 1-9 forms for substantive appeals, could constitute NODs. The analysis in Stratt and Hamilton was all about the process that takes place when you appeal a claim in the VA system. The idea being that it starts with a Notice of Disagreement. It's followed by the preparation of a statement of the case by the VA, explaining more fulsomely the basis for the denial at the regional office level, or Agency of Original Jurisdiction, as the statutory term is. And then followed by the filing of a substantive appeal, often referred to, and in those decisions referred to, as the VA Form 1-9, which is the number of the form that most people file and still continue to use to file today for purposes of confirming their appeal. Once that document is filed, the VA Form 1-9, then the case is certified. But there's a lot of stuff that goes on before the case is certified for the board. That's what I meant to say, the board. And one of those things is that after a Notice of Disagreement is filed, the regulations require the Agency of Original Jurisdiction, the RO, to reconsider the case. They need to do, and partly this is because as part of the NOD process, the claimants are actually allowed to submit new evidence. So that if the, an example I think maybe one we even used in the past was, if the NOD denied the accrued benefits claimant her claim, because she could not establish that she was actually married to the deceased veteran. And that's what the RO said. The claimant, as part of her NOD, could attach her marriage certificate. The NOD, the Agency of Original Jurisdiction, is required to take that evidence into account. 1926 was the old regulation, 38 CFR. And they might award the benefits, thereby eliminating the need for any further appeal to the board. So it became important to this court and to the Veterans Court at the time to try to determine which of these documents, as part of the process of starting the appeals, was the one Congress referred to when they said Notices of Disagreements. There really wasn't any dispute in those cases about what these things were. They were Notices of Disagreements that were filed in those cases prior to November 18, 1988, but there were VA Form 1-9s, the substantive appeal documents, that were filed subsequent to that date. And the arguments in those cases were all about, well, could those qualify? And this court, especially in Hamilton, went through in a very, very thorough manner the VA appellate process. And in so doing, there's reference, actually it's in Stratt, to, well, Congress referred to NODs. But the point of that reference isn't to define for all time what an NOD is required or may contain. The point of that reference was to define for purposes of those cases whether these things were NODs as opposed to VA Form 1-9s. Now we fast forward to Gallegos in 2002, which, coincidentally, is a year or so after Congress repealed 7251-NO. So at the time of Gallegos, we don't even have the statute that was in existence at the time of Stratt and Hamilton that led to that entire analysis. In 2002, this court in Gallegos says, among other things, thus, Section 7105, which is the statute that talks about notices of disagreement, does not express a complete and unambiguous meaning for the statutory term, notices of disagreement. We can only read that one way, and that answers the precise question that's raised in this case, not Stratt to Winsky. The question raised in this case is, can the VA, in their notice of disagreement, ask the Veteran to identify the body part? And we believe we can, and that's what we're doing, and that's all we're asking for. And the form does ask for additional information if it's available to the individual. And why? Because that helps the process. The sooner we get the information, which is eventually going to have to come from the Veteran anyway, the better off it is. So we ask for that information. Like, for example, with respect to the part on the form where it says, what is your rating or desired rating? We say, if you know. We're not holding these people to that, but if they have the information, and many of them do, that's a good time to give it to us as part of the NOD process. That's all we're doing. And we're not asking for detailed medical views about why they think that they're service-connected, if that's the issue. We're asking, what is the area of your dispute? And it's to help the VA figure out in a claim, especially in a claim where there's multiple things, that they're talking about this particular claim or that particular claim, because that is the case. Many of these cases have multiple claims. And I will add one thing. I'm going to repeat it here that I responded to at oral argument. It hasn't come up yet, but in October, I think NOVA and PJG were concerned about that the form doesn't have a box on it. What if I want to appeal everything? And we are looking into that, and as I said in October, I think we're going to see what we can do about adding that. Anything else for Mr. Hockey? Anything else? I think. Okay. Good. Thank you. Thank you, Mr. Hockey. Ms. Hines. Thank you. A few points. With respect to the NOD and the specificity of the NOD. In 2011, this court addressed the NOD and the process, the process of appealing an adverse decision in Rivera. And said, Congress believed that veterans often lacked the information necessary to pursue an appeal. Stands for the proposition that the NOD is supposed to be and was always envisioned to be something simple and easy for the veteran to do. It puts the burden then on the VA to prepare a statement of the case. It's different from a typical appeal, but it is specific to a veteran's appeal. And while Mr. Hockey is correct that for some veterans, it may be good to provide more information sooner. That's not the case for all. And that is our problem with the increased specificity. It may help some, but it may hurt others. That's the problem. Would the box saying, I appeal everything, suffice? Well, Your Honor, it may. And that issue was addressed in the rulemaking. It's a JA-24. And Mr. Hockey is correct that at oral argument in October, he said that that was being looked into. In January of this year, the VA reissued the NOD form and did not change that. So apparently they have looked into it, but nothing has changed. The form is still as complicated and inconsistent with the regulations as it was at the beginning. And I would point something else out on the NOD form. There are two detailed pages of instructions followed by the form itself. And in all capital letters on the first page of the form, at the very top, presumably where the veteran reads first, the VA instructs the veteran, a desire to contest the result will constitute a notice of disagreement. While special wording is not required, the NOD must be in terms which can be reasonably construed as disagreement with the determination. That language is the language of the regulation that's been superseded by the new regulations. That language is telling the veteran, all you need to do is contest the prior determination. That language could certainly be read by a veteran as saying, I don't need to provide all this information. All I need to do is tell the VA I disagree with the decision. But they can't. They'll lose their rights if they do that. Now, Mr. Hockey, I want to move to the argument that Mr. Hockey made with respect to balancing the NOD and making it mandatory. There are statistics in the record that during a study in Houston, when the NOD was optional, an optional NOD, in the first month, 90% of recipients filled out the form. And a few months later, that was up to about 94%. So many people will do it. They get the form, they'll fill it out. Our objection is to those who can't or won't. And there should be safeguards in place consistent with how the NOD has been defined as something much less than it is now, and something that gives people the opportunity, if they don't file, if they can't file, if they file late, to get some relief. I thought there was something in the register that said it was closer to 50% using the NOD. Am I mistaken? It's okay. We'll look it up in the register. That's my recollection of the record, too. With respect to 5110, and this is moving to the effective date issue, Mr. Hockey argued that there was an effective date result under Section 5110. Section 5110 refers again to the application. That's true. But Section 5102, Section 5101, refer to and provide when a veteran is claiming or applying, the form will be sent. That, in our view, the claim or application made at that time, before the form is sent, that should be the application that is referenced for the effective date. So you can't read Section 5110 in isolation. You have to read it together with 5101 and 5102 to look at what Congress was intending and what Congress was addressing. Okay, one final comment, if you have it. The final comment is with respect to notifications. Mr. Hockey was asked a question about the notification under Section 5102C, and he said that he believed that was from the application. That's not true. Section 5102C is not from when the application is originally sent. It is from when VA gives notice of something that needs to be completed. That is an additional problem with the regulations. Under the new regulations, the veteran will have one year from submitting the incomplete application to provide information. The VA's position is that the application itself can provide the notice of what's missing, and that's a bit circular. If the veteran submits an application that's incomplete and already has that notice, they get nothing else, or they may get nothing else, from the VA telling them what else they need to do. The statute requires one year to provide information from the date of notice, not from when the form is submitted originally, which is what the regulations now state. So we believe those regulations, both for the incomplete application, are inconsistent with that portion of the statute. Thank you. Okay, thank you. Thank you both. The case is taken under submission. That concludes the argued cases for this panel this morning. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock a.m.